UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:22-CR-00169-JAR |
| TERRELL ALEXANDER, | ) ) |
| Defendant. | ) ) ) |

**GUILTY PLEA AGREEMENT**

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are the defendant Terrell Alexander, represented by defense counsel Mark Hammer and Matthew Wayman, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri.  This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri.  The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts 1 through 17 and Count 23 of the Indictment, the Government agrees to move for the dismissal of Counts 18 through 22 at the time of sentencing. Moreover, the United States agrees that no further federal prosecution will be brought in this

1

District relative to the defendant's fraudulent EIDL loans from June through August of 2020 of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea.  The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a).  The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

The defendant also agrees, pursuant to the guilty plea to Counts 1 through 10 and Count 23, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but not limited to all items identified in the forfeiture allegation of the Indictment and in the Bill of Particulars.

**3. ELEMENTS:**

As to Counts 1 through 10, Defendant admits to knowingly violating Title 18, United States Code, Section 1343, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

**One,** the defendant devised a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, representations or promises; and

**Two,** the defendant acted with intent to defraud; and

**Three,** in advancing, furthering, or carrying out the scheme, Defendant transmitted any wiring, signal, or sound by means of a wire, radio, or television communication in interstate commerce or caused the transmission of any wiring, signal, or sound of some kind by means of a wire, radio, or television communication in interstate commerce; and

**Four,** the scheme occurred in relation to, or involving a benefit authorized, transferred, disbursed, or paid, in connection with a presidentially declared major disaster or emergency.

As to Counts 11 through 15, Defendant admits to knowingly violating Title 18, United States Code, Section 1028A, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

**One,** the defendant knowingly transferred, possessed, or used;

**Two,** without lawful authority;

**Three,** a means of identification of another person;

**Four,** during and in relation to the felony offenses of wire fraud and theft of government money.

As to Counts 16 and 17, Defendant admits to knowingly violating Title 18, United States Code, Section 1028(a)(2), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

**One,** the defendant knowingly transferred an identification document, authentication feature, or false identification document; and

**Two,** when the defendant transferred an identification document, authentication feature, or false identification document, the defendant did so knowing the document or feature was stolen or produced without lawful authority; and

**Three,** the transfer of the identification document, authentication feature, or false identification document was in or affected interstate commerce.

As to Count 23, Defendant admits to knowingly violating Title 18, United States Code, Section 641, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

**One,** the defendant knowingly embezzled, stole, and converted to Defendant's use or the use of another, money or property with the intent of depriving the owner of the use or benefit of the money or property; and

**Two,** the money or property belonged to the United States; and

**Three,** the value of the money or property was more than $1,000.00.

## 4.  FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial.  These facts may be considered as relevant conduct pursuant to Section 1B1.3:

In March 2020, the Coronavirus Aid, Relief, and Economic Security Act (the CARES Act) was signed into law. The CARES Act, in conjunction with the officially declared disaster related to the COVID-19 pandemic, allowed the Small Business Administration (SBA) to offer Economic Injury Disaster Loans (EIDL) and advances to business owners whose businesses had been negatively affected by the pandemic. Applications for EIDL funding were submitted to the SBA by way of online portal. The servers receiving the EIDL applications via the SBA's online portal were in Virginia, Iowa, and Washington state. EIDL applications included questions regarding the size the affected business, the ownership of the business, number of employees, gross business

4

revenues in the 12 months prior to the COVID-19 impact on the national economy, and an affirmation under the penalty of perjury that the information submitted on the application was true and correct.

Defendant Terrell Alexander (Defendant) submitted multiple applications for EIDL funding. These applications represented real businesses, fictional businesses, new businesses, and inactive businesses. These applications were submitted, via the SBA online portal, from the Eastern District of Missouri. Upon the approval of many of these applications, the SBA electronically transmitted the EIDL funding from the SBA to bank accounts that were controlled by Defendant or others known to Defendant. Once the funds were deposited into these bank accounts, Defendant wire transferred or otherwise moved the funds to conceal the true ownership of the funds.

Defendant submitted one EIDL application with his own name and personally identifiable information (PII), and the application was denied. Following that denial, Defendant applied for, and received, EIDL funding using the business names and individual names as listed below:

| 1 | 6/25/2020 | Direct Management, LLC | $150,000 |
| 2 | 7/4/2020 | Ferrell Thomas | $25,300 |
| 3 | 7/28/2020 | Qutumn Management, LLC | $150,000 |
| 4 | 8/7/2020 | Total CPA, LLC | $111,900 |
| 5 | 8/10/2020 | Precision Safe Healthcare, LLC | $115,800 |
| 6 | 6/25/2020 | Florentine Investment, LLC | $107,000 |
| 7 | 7/4/2020 | S.W. | $50,500 |
| 8 | 7/4/2020 | E.M. | $37,900 |

| 9 | 7/30/2020 | JCC Personnel Management, LLC | $121,200 |
| 10 | 8/7/2020 | Top Knotch Marketing, LLC | $110,100 |

As to Count 1, Direct Management, LLC, is a company owned and operated by Defendant. On the Direct Management EIDL application, Defendant used a Social Security Number (SSN) that was not assigned to him by the Commissioner of Social Security; the number Defendant claimed was his assigned SSN was assigned to a minor child. Defendant also inflated the gross revenues and number of employees on the Direct Management application. Defendant admitted to these inflations, stating it was not a problem because most applications submitted to the SBA would be similarly exaggerated.

As to Counts 2 and 16, Ferrell Thomas is a fictitious individual. The SSN used for Ferrell Thomas is assigned to another individual, and the driver's license submitted to the SBA as identification for the EIDL application, which contains a picture of Defendant, is fraudulent and not a legitimate driver's license. As Ferrell Thomas is a fictitious person, the business described in the EIDL application under that name is also fictitious. Defendant knew that Ferrell Thomas and Ferrell Thomas's business were fictitious when he submitted the application. The EIDL funding was deposited into a credit union account under the name Ferrell Thomas, which was opened by Defendant using the same fictitious identity.

As to Counts 3 and 17, the EIDL application for Qutumn Management was submitted by the Defendant with Defendant's name and an SSN that was not assigned to him. Qutumn Management, LLC is a business registered with the Secretary of State of Missouri, but Defendant is not the registered agent/owner. The application package also contained a fraudulent Missouri

driver's license and a fraudulent Social Security card. After the SBA paid and then recalled the funding for this loan, Defendant called the SBA requesting the loan be deposited into a Regions Bank account for which he was the signatory.

As to Count 4, Defendant submitted the EIDL application for Total CPA, LLC, despite that business not being an active business with employees. Defendant again used a Social Security Number that was not assigned to him when submitting this application. As to Count 5, Defendant submitted the EIDL application for Precision Safe Healthcare, LLC, which was registered with the Missouri Secretary of State eight days prior to the date of the EIDL application, with a Social Security Number that was not assigned to Defendant. The EIDL funds for Total CPA, LLC and Precision Safe Healthcare, LLC were deposited into two separate bank accounts of which Defendant is the signatory.

As to Counts 6, 7, 11, and 12, Defendant submitted EIDL applications for Florentine Investment, LLC, and S.W., using the name and personally identifying information for S.W. on both applications, knowing that it was S.W.'s true name and personally identifying information. These applications contained fictitious business information for Florentine Investment, LLC, as well as S.W.

As to Counts 8 and 13, Defendant caused the submission of an EIDL loan application in the name of E.M., of which E.M. had no knowledge. In submitting or causing this application to be submitted, Defendant used E.M.'s name and date of birth on the application, knowing that it was E.M.'s true name and date of birth. The remainder of the information on the application was false, as E.M. does not run a business or have employees. Once the EIDL funding was approved, it was electronically deposited into a bank account in E.M.'s name, of which E.M. had no

7

knowledge. From that bank account, an amount in excess of the amount of EIDL funding was wired to a bank account of which Defendant was the signatory.

Finally, as to Counts 9, 10, 14, and 15, Defendant submitted EIDL applications on behalf of another individual, J.C. J.C.'s businesses were JCC Personnel Management and Top Knotch Marketing. In submitting these applications, Defendant used and submitted J.C.'s personally identifiable information, to include J.C.'s name, date of birth, and Social Security Number, knowing that it was J.C.'s true personally identifiable information. However, the remaining information in the application was falsified, as it significantly overstated the revenues and number of employees for J.C.'s two businesses. After the EIDL funding was transferred to bank accounts owned by J.C., J.C. then transferred a percentage of the funding to Defendant.

In submitting the above-described EIDL applications to the SBA via online portal, Defendant was able to collect over $740,000 in EIDL funding, which was property of the United States or any department or agency thereof, to which he was not entitled. After funding was received, Defendant and others connected to Defendant contacted employees of the banks where Defendant had bank accounts and requested to transfer money among the different accounts in order to conceal ownership of the money. Defendant also withdrew some of the money in cash.

Defendant admits herein that he devised a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, representations or promises, with intent to defraud, and in advancing, furthering, or otherwise carrying out the scheme, Defendant transmitted any wiring, signal, or sound by means of a wire, radio, or television communication in interstate commerce or caused the transmission of any wiring, signal, or sound of some kind by means of a wire, radio, or television communication in interstate commerce; and the scheme occurred in relation to, or

involving a benefit authorized, transferred, disbursed, or paid, in connection with a presidentially declared major disaster or emergency, to wit: the submission of ten different EIDL applications, authorized by the CARES Act in relation to the COVID-19 pandemic, all of which contained false and fraudulent information to induce the SBA to transmit EIDL funding to a bank account under the control of Defendant or others related to Defendant.

Defendant further admits herein that he knowingly transferred, possessed, or used, without lawful authority, the means of identification of other people, including S.W., E.M., and J.C., during and in relation to the felony offenses of wire fraud and theft of government money.

Defendant further admits herein that, as part of two of the above-referenced EIDL applications, that Defendant knowingly transferred an identification document, authentication feature, or false identification document; and when the defendant transferred an identification document, authentication feature, or false identification document, the defendant did so knowing the document or feature was stolen or produced without lawful authority; and the transfer of the identification document, authentication feature, or false identification document was in or affected interstate commerce, to wit: the transfer of two false and fraudulent driver's licenses in the name of Defendant and Ferrell Thomas via the online SBA portal.

Defendant further admits herein that, as a result of submitting the EIDL applications, Defendant knowingly embezzled, stole, and converted to Defendant's use or the use of another, money or property with the intent of depriving the owner of the use or benefit of the money or property; the money or property belonged to the United States; and the value of the money or property was more than $1,000.00.

**5. STATUTORY PENALTIES:**

The defendant fully understands that the maximum possible penalty provided by law for the crimes to which the defendant is pleading guilty in Counts 1 through 10 is imprisonment of not more than 30 years, a fine of not more than $1,000,000 or both such imprisonment and fine.  The Court may also impose a period of supervised release of not more than 5 years.

The defendant further understands that the required penalty provided by law for the crimes to which the defendant is pleading guilty in Counts 11 through 15 is imprisonment of 2 years, to run consecutive to any other imposed sentence. The Court may also impose a period of supervised release of not more than 1 year.

The defendant further understands that the maximum possible penalty provided by law for the crimes to which the defendant is pleading guilty in Counts 16 and 17 is imprisonment of not more than 15 years, a fine of $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

The defendant further understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty in Count 23 is imprisonment of not more than 10 years, a fine of not more than $250,000 or both such imprisonment and fine.  The Court may also impose a period of supervised release of not more than 3 years.

**6. U.S. SENTENCING GUIDELINES:  2021 MANUAL:**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category.  The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

**a. Chapter 2 Offense Conduct:**

**(1) Base Offense Level:** The parties agree that the base offense level for Counts 1 through 10 is **7**, as found in Section 2B1.1. The parties further agree that the base offense level for Counts 16, 17, and 23 is **6**, as found in Section 2B1.1. The parties further agree that pursuant to USSG §3D1.2(d), the guidelines for counts 1 through 10, 16, 17, and 23 should be grouped together.

The parties further agree as to Counts 11 through 15, pursuant to U.S. Sentencing Guideline §2B1.6, the guideline sentence is the term of imprisonment required by statute. Chapters Three (Adjustments) and Four (Criminal History and Criminal Livelihood) shall not apply to these counts of conviction.

**(2) Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply: **14** levels should be added pursuant to Section 2B1.1(b)(1)(H), because the actual and intended loss amount was greater than $550,000 but less than $1,500,000; **2** levels should be added pursuant to Section 2B1.1(b)(10)(C), because the offenses involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means; and **2** levels should be added pursuant to Section 2B1.1(b)(12), because the offenses involved conduct described in 18 U.S.C. § 1040 (fraud in connection with major disaster or emergency benefits).

**b. Chapter 3 Adjustments:**

**(1) Acceptance of Responsibility:** The parties agree that **3** levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to

11

plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

(2) **Other Adjustments:** The parties agree that the following additional adjustments apply: none.

c. **Estimated Total Offense Level:** The parties estimate that the Total Offense Level for Counts 1 through 10, 16, 17, and 23 is **22.**

d. **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

e. **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

**7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

 **a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

 **(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

 **(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

 **b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

 **c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records

pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

8. **OTHER:**

    a. **Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

    b. **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

    c. **Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished

    d. **Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $1,800.00 which the defendant agrees to pay at the time of sentencing. Money paid by the

defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

      e. **Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

      f. **Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment.

      g. **Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agencies.

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. Defendant also agrees to the entry of a forfeiture money judgment against the defendant and in favor of the Government in an amount of no less than $740,000, the exact amount to be determined by this Court at or before sentencing. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

**9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance

of witnesses.  The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding.  The defendant's counsel has explained these rights and the consequences of the waiver of these rights.  The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel.  The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel.  Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation.  In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory.  Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

10. **<u>VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT</u>:**

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in

17

this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

**11. CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

**12. <u>NO RIGHT TO WITHDRAW GUILTY PLEA</u>:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

| | |
|---|---|
| 11/16/2022<br>Date | *Diane Klocke*<br>Diane Klocke<br>Special Assistant United States Attorney |
| 11/15/2022<br>Date | *Terrell Alexander*<br>Terrell Alexander<br>Defendant |
| 11/15/2022<br>Date | *Mark A. H.*<br>Mark Hammer<br>Attorney for Defendant |